## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHARLES ANDERSON, et. al.

        Plaintiffs,

vs.                                    CASE NO: 8:19-cv-01225-MSS-AEP

MOSAIC FERTILIZER, LLC, a foreign
corporation doing business in the State
of Florida,

                 Defendant.       /

## DEFENDANT MOSAIC FERTILIZER, LLC'S
## MOTION TO DISMISS COMPLAINT WITH PREJUDICE
## AS BARRED BY THE STATUTES OF LIMITATION

Defendant Mosaic Fertilizer, LLC ("Mosaic"), pursuant to sections 95.011 and 95.11, Florida Statutes (2004), and Federal Rule of Civil Procedure 12(b)(6), moves for dismissal of Plaintiffs' Complaint & Demand for Jury Trial ("Complaint") with prejudice.  On the face of the Complaint, all causes of action pleaded by Plaintiffs are barred by Florida's applicable statutes of limitation.

## INTRODUCTION

This case represents the final chapter of a failed class action brought in state court **nearly 15 years ago**.  Plaintiffs, former members of the putative class, seek to pursue their individual claims after Florida's Second District Court of Appeal definitively rejected class certification, and after Plaintiffs' attempts to intervene in the original action likewise failed. This Motion raises two discrete questions: (1) Have Plaintiffs' claims been timely brought under Florida's applicable statutes of limitation; and, (2) if not, have these claims been tolled under Florida law?  The answer to both questions is "**no**," requiring dismissal with prejudice.

After almost 15 years, the applicable statutes of limitation have long expired.  And importantly, the Florida legislature has chosen to preclude any tolling of a limitations period that is not specifically permitted by statute.  § 95.051(2), Fla. Stat. (2004) ("***No disability or other reason shall toll the running of any statute of limitations *except* those specified in this section***, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law." (emphasis added)).  The Florida Supreme Court has repeatedly held that section 95.051(2) specifically precludes any tolling principle not listed in the statute.  Thus, given that none of the tolling principles in section 95.051 apply to Plaintiffs, their claims are time-barred.

In an effort to escape the unescapable, Plaintiffs will likely argue—as their former class representatives did—that Florida law recognizes the tolling rule created in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), even though that rule is ***not*** among the exclusive list of tolling exceptions in section 95.051.  This argument contradicts the majority of federal courts that have confronted this question, including the Second and District of Columbia Circuits.  Indeed, it contradicts *American Pipe* itself, in which the Supreme Court of the United States cautioned that tolling principles cannot be inconsistent with the legislative scheme.  And yet, despite section 95.051's clarity, a *minority* of federal courts have misunderstood Florida law to recognize *American Pipe* tolling.  This case presents the Court with an opportunity to help correct the minority's misunderstanding, side with the majority of federal courts, and give meaning to the plain language of section 95.051(2) by holding that it precludes *American Pipe* tolling under Florida law.

## BACKGROUND AND PROCEDURAL HISTORY

As Plaintiffs acknowledge in the Complaint, this case is a progeny of the failed state-

court class action in *Curd v. Mosaic Fertilizer, LLC*, Case No. 04-CA-0086543 (Fla. 13th Cir. Ct.) (the "Curd Action"),[1] where seven fishermen and crabbers alleged that process water released from Mosaic's Riverview facility into Tampa Bay in September 2004—nearly 15 years ago—damaged them, other commercial fishermen, public and private businesses, and public recreation.  (Dkt. 1-3 ¶¶3, 9-15).  The Florida Supreme Court later limited the claims in the Curd Action solely to damages to commercial fishermen but emphasized that the fishermen still had to "prove all of the elements of their causes of action, including damages."  *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010).

Plaintiffs are 118 former members of the putative class in the Curd Action.  (Dkt. 1-3 ¶3).  Although the trial court in the Curd Action initially certified Plaintiffs' class, the Florida Second District Court of Appeal reversed because the putative class representatives failed to demonstrate any reasonable methodology for proving class-wide impact resulting from the process water release.  *See Mosaic Fertilizer, LLC v. Curd*, 259 So. 3d 239, 245 (Fla. 2d DCA 2018).  Among the key findings by the Second District was that—after well over a decade of litigation—the putative class representatives offered only the lay testimony of two fishermen in support of class certification.  *Id*. at 242.  In sharp contrast, Mosaic presented unrebutted testimony from seven expert witnesses that: (1) the spill's effects "only caused localized, ephemeral, and statistically insignificant changes in sea-life communities"; (2) "[a]fter Hurricane Frances, Tampa Bay became so inundated with pollutants and debris from storm

---

[1] While courts are normally constrained to the four corners of a complaint in ruling on a motion to dismiss, the Curd Action is referenced in the Complaint itself.  Alternatively, this court may take judicial notice of matters from state court actions.  *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013); *see also* Fed. R. Evid. 201(b).

water runoff that there was no reliable method of distinguishing Mosaic's pollutants"; (3) "there were no long-term or population-level effects on any species of marine organism and . . . the only effects on marine life were isolated to the immediate area of the spill"; and (4) "the various fishing areas covered by the putative class [were] so diverse . . . that it would be impossible to correlate or make predictions about those fishing areas." *Id.* at 242–43.[2]

Plaintiffs also attempted to intervene as parties in the Curd Action *twice*—once before class certification and once after the Second District had reversed certification. Both attempts were unsuccessful because Plaintiffs failed to satisfy the requirements of Florida Rule of Civil Procedure 1.230, which governs intervention. *See* Order Denying Mtn. for Leave to Intervene, Case No. 04-CA-0086543 (Fla. 13th Cir. Ct. Apr. 12, 2019) (Stephens, J.); Order Denying Mtn. for Leave to Intervene, Case No. 04-CA-0086543 (Fla. 13th Cir. Ct. Nov. 22, 2013) (Huey, J.); *see also Anderson v. Mosaic Fertilizer, LLC*, 160 So. 3d 419 (Fla. 2d DCA 2015) (table decision) (affirming the first denial of intervention without opinion).

In its opposition papers to both motions for leave to intervene, Mosaic argued, among other things, that Plaintiffs' intervention would be futile because all their claims were barred by the applicable statutes of limitation. Neither the order denying Plaintiffs' first motion for leave to intervene in the Curd Action nor the Second District's *per curiam* affirmance of that order addressed Mosaic's statute-of-limitations argument. However, in the order denying Plaintiffs'

---

[2] The Second District also noted that the experts' conclusions were supported by "a bevy of environmental impact reports authored by various government agencies." *Id.* at 242. This included a Preassessment Data Report ("PADR") and a Damage Assessment and Restoration Plan ("DARP") jointly authored by the National Oceanic and Atmospheric Administration, U.S. Fish and Wildlife Service, Florida Department of Environmental Protection, Environmental Protection Commission of Hillsborough County, and Florida Fish and Wildlife Conservation Commission.

second motion for leave to intervene in the Curd Action, the state trial court reasoned that: (1) 107 of the 118 proposed intervenors (i.e., Plaintiffs in this case) were barred from intervention by the law-of-the-case doctrine because they were parties to the first motion for leave to intervene; and (2) the remaining 11 proposed intervenors, who were not barred by the law-of-the-case doctrine, should also be denied leave to intervene because, among other things, they would face the same statute-of limitations defense as the other 107 proposed intervenors.  *See* Order Denying Mtn. for Leave to Intervene, Case No. 04-CA-0086543 (Fla. 13th Cir. Ct. Apr. 12, 2019) (Stephens, J.).

With their other options appropriately foreclosed, the 118 Plaintiffs filed their Complaint in this action, which is virtually identical to the operative complaint in the Curd Action.  However, as the trial court in the Curd Action accurately observed, Plaintiffs must now finally face Mosaic's statute-of-limitations argument.

## STANDARD OF REVIEW

"On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."  *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) (citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)).  "Except in matters governed by the federal Constitution or by acts of Congress, federal courts in diversity cases must apply the law of the forum state, including its statute of limitations."  *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988).  While a statute of limitations is typically an affirmative defense, it may also serve as the basis for dismissal under Rule 12(b)(6) "if it is 'apparent from the face of the complaint' that the claim is time-barred."  *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)).

<u>MEMORANDUM OF LAW</u>

**I.**  **It is apparent from the face of the Complaint that the statutes of limitation governing Plaintiffs' claims have all lapsed.**

Civil actions in Florida are barred "unless begun within the time prescribed" in Chapter 95 of the Florida Statutes, which contains Florida's statutes of limitation.  § 95.011, Fla. Stat. (2004).  Apart from some irrelevant exceptions, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." § 95.031, Fla. Stat. (2004).  "A cause of action accrues when the last element constituting the cause of action occurs."  § 95.031(1).  "Damages are often the last element of a cause of action to accrue."  *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 862 (Fla. 2016).

Plaintiffs assert three causes of action against Mosaic: (1) statutory strict liability under section 376.313(3), Florida Statutes (2004); (2) common law strict liability; and (3) common law negligence.  The last element for each of these causes of action is damages.  *See Clay Elec. Co-op., Inc. v. Johnson,* 873 So. 2d 1182, 1185 (Fla. 2003) (identifying the last element of a common law negligence claim as damages); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976) (identifying the last element for common law strict liability as damages); *see also Aramark Unif. & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 24 (Fla. 2004) (explaining that the main difference in the elements of a traditional strict liability claim and a claim under section 376.313 is that, in the latter, the plaintiff need not prove causation—thus, the last element is also damages).

As is evident from the face of the Complaint, the process water release was in September 2004.  (Dkt. 1-3 ¶3).  The last element for each of Plaintiffs' claims—damages, if there were any—would have been satisfied in September 2004 when the release occurred.

Consequently, these causes of action accrued in September 2004, and that is when their statutes of limitation began to run. Plaintiffs maintain that they continue to suffer damages from the effects of the release. (*Id.* ¶15). However, even if that were true—and it is not—it would be irrelevant to the accrual of Plaintiffs' claims. *See Suarez v. City of Tampa*, 987 So. 2d 681, 686 (Fla. 2d DCA 2008) ("A continuing tort is 'established by continual tortious acts, not by continual harmful effects from an original, completed act.'" (quoting *Horvath v. Delida*, 540 N.W.2d 760, 763 (Mich. 1995))).

The statutes of limitation for negligence, strict liability, and statutory claims are all four years. *See* §§ 95.11(3)(a) ("[a]n action founded on negligence"); 95.11(3)(f) ("[a]n action founded on statutory liability"); 95.11(3)(p) ("[a]ny action not specifically provided for in these statutes"). Thus, the latest Plaintiffs could have brought timely claims against Mosaic was September 2008. It is now mid-2019—**nearly 11 years after the expiration of all applicable statutes of limitation**. Consequently, the facts alleged in the Complaint conclusively establish that all three of its Counts are time-barred and must therefore be dismissed—unless Plaintiffs can establish that one of the tolling exceptions enumerated in section 95.051 applies, which they cannot.

## II.   Under Florida law, the pendency of class certification in the Curd Action did not toll the accrual of the statutes of limitation.

When Mosaic pointed out the futility of Plaintiffs' attempts to intervene in the Curd Action because the statutes of limitation had run, Plaintiffs responded that these statutes were tolled under the U.S. Supreme Court's holding in *American Pipe*. Thus, Mosaic anticipates that Plaintiffs will raise the same argument in response to this Motion. These arguments, however, must fail under the well-understood limits of the *American Pipe* decision and the

plain language of Chapter 95—as construed by the Florida Supreme Court in at least three decisions.

**A.      Federal class action tolling rules do not apply to state law claims.**

In *American Pipe*, the Supreme Court held that "the commencement of [an] original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553–54.[3]  As relevant to this case, the Supreme Court reached its holding after concluding that class action tolling was **consonant with the legislative scheme**." *Id.* at 557–58 (emphasis added).  Thus, "the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled **under certain circumstances *not inconsistent* with the legislative purpose**." *Id.* at 559 (emphasis added).

Since then, the Supreme Court has also recognized that "[i]n *American Pipe,* **federal** law defined the basic limitations period, **federal** procedural policies supported the tolling of the statute during the pendency of the class action, and a particular **federal** statute provided the basis for deciding that the tolling had the effect of suspending the limitations period." *Chardon v. Fumero Soto*, 462 U.S. 650, 660–61 (1983) (emphasis added).  Conversely, if a question of state law is presented, then state law on limitations and tolling must apply.  *See, e.g., Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–51 (1980) (reaffirming the Court's

_____

[3] Later, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351–52 (1983), the Supreme Court extended the rule created *by American Pipe* to parties who brought their own actions rather than attempted to intervene after the court found class treatment to be inappropriate.  Thus, under **federal law**, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied."  *Id.* at 354.

holding in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949), that federal courts sitting in diversity apply state rules with respect to the tolling of state statutes of limitations);  *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("The fact that under [state] law a statute of limitations might be lengthened or shortened . . . [is a matter] of local law properly to be respected by federal courts . . . ."); *Matana v. Merkin*, 957 F. Supp. 2d 473, 488 (S.D.N.Y. 2013) ("Where the timeliness of state law claims is at issue, a federal court 'must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another jurisdiction.'" (quoting *Casey v. Merck*, 653 F.3d 95, 100 (2d Cir. 2011))); *Vincent v. The Money Store*, 915 F. Supp. 2d 553, 561 (S.D.N.Y. 2013) ("[I]n evaluating the timeliness of the claims, all based on state law, the Court must look to the state statutes of limitations including the state tolling rules.").  Thus, in this diversity action, this Court must apply Florida's tolling rules to the applicable Florida statutes of limitation.

> **B.** **Florida does not recognize *American Pipe* tolling, and applying it would directly contradict Florida's legislative scheme.**

Based on the boundaries of *American Pipe*, this Court must consider Florida's law of limitations to determine if it contains any tolling principles that could save Plaintiffs' time-barred claims.  Fortunately, that question is directly answered by section 95.051, Florida Statutes (2004), which is titled: "When limitations tolled."

As it existed in 2004, when Plaintiffs' causes of action accrued, section 95.051(1) set forth eight instances of when a statute of limitations can be tolled—none of which resemble

*American Pipe* or are otherwise relevant.[4]  And crucially to the dispositive issue here, section 95.051(2) unequivocally states, "***No disability or other reason shall toll the running of any statute of limitations *except those specified* in this section***, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law."  § 95.051(2) (emphasis added).

In construing the plain language of section 95.051(2), the Florida Supreme Court has concluded that the statute "**delineates an *exclusive* list of conditions that can 'toll' the running of the statute of limitations**."  *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) (emphasis added).   Thus, section 95.051(2) "***specifically precludes application of *any* tolling provision not *specifically* provided therein***."   *Hearndon v. Graham*, 767 So. 2d 1179, 1185 (Fla. 2000) (emphasis added); *see also Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 46 (Fla. 2009) ("[I]n the absence of a specific statutory authorization for doing so, we are precluded from tolling the statute of limitations based on the continuous representation doctrine.").

Given that section 95.051: (a) does not include *American Pipe* tolling, and (b) explicitly precludes the application of any tolling principles not enumerated in the statute, this Court need not look any further.  Simply put, Plaintiffs' individual claims were not tolled by the pendency of the Curd Action.  Thus, they are all barred by the applicable statutes of limitation.  The same analysis was recently employed by the Supreme Court of the United States in *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019), where it declined to hold that the time limit for appealing an order granting or denying class certification under Federal Rule of Civil

---

[4] The current version lists nine, but all remain inapplicable.

Procedure 23(f) was subject to tolling.  Writing for a unanimous court, Justice Sotomayor explained:

> Where the pertinent rule or rules invoked show **a clear intent to preclude tolling**, **courts are** *without authority* **to make exceptions** merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving.  **Courts may** *not disregard* **a properly raised procedural rule's plain import any more than they may a statute's**.

*Id.* (emphasis added) (citations omitted).  Thus, this Court is likewise without authority to make exceptions where the "plain import" of section 95.051(2) clearly precludes any form of tolling not specifically enumerated in the statute.

### C.    The weight of federal authority recognizes that Florida law does not permit *American Pipe* tolling.

Given the language of section 95.051(2), a majority of federal courts—including this Court—have unsurprisingly held that section 95.051(2) precludes *American Pipe* tolling in Florida.  *See Senger Bros. Nursery v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("*American Pipe* and *Crown* did not involve a claim brought in federal court on diversity of citizenship."); *see also Adams v. Deutsche Bank AG*, 529 F. App'x 98, 100 (2d Cir. 2013) ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed."); *In re Vitamins Antitrust Litig.*, 183 F. App'x 1, 2 (D.C. Cir. 2006) ("The Florida legislature has enumerated eight scenarios in which the applicable statute of limitations is tolled, and a pending class action is not one of them."); *Weatherly v. Pershing, LLC*, 322 F. Supp. 3d 746, 751 (N.D. Tex. 2018) ("[T]he Florida legislature has clearly spoken on the issue and this Court is bound by its language."); *Williams v. Countrywide Fin. Corp.*, No. 2:16-cv-04166-CAS(AGRx), 2017 WL 986517, at *9 (C.D. Cal. Mar. 13, 2017) ("Because the Florida Supreme Court appears to have foreclosed tolling doctrines not enumerated in

Section 95.051, the Court finds that the filing of the Waldrup Action did not toll the limitations period of plaintiffs' FDUTPA claim"); *Dineen v. Pella Corp.*, No. 2:14-CV-03479-DCN, 2015 WL 6688040, at *3 (D.S.C. Oct. 30, 2015) ("The commencement of a class action is not included among the tolling conditions listed in § 95.051.  This omission strongly suggests that class action tolling is not recognized under Florida law . . . .").

These courts reached their conclusions by a very direct means: They applied the plain language of the statute.  Indeed, the *only* two federal appellate courts to have addressed this issue emphasized that Florida "clearly prohibits tolling during the pendency of class action lawsuits" and any contrary interpretation of section 95.051(2) "would contravene the straightforward statutory language."  *Adams*, 529 F. App'x at 100; *In re Vitamins Antitrust Litig.*, 183 F. App'x at 2; *see also Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) (same).  No further analysis was necessary or, indeed, permissible.  As the Supreme Court has "stated time and time again . . . courts **must** presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: '**judicial inquiry is complete**.'"  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (emphasis added) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

At least one federal court has also stated that reading section 95.051(2) as excluding *American Pipe* tolling is consistent with *American Pipe* itself, which stressed that tolling principles must be consonant with the legislative scheme and not inconsistent with the legislative purpose.  *See Weatherly*, 322 F. Supp. 3d at 751 ("[E]ven *American Pipe* recognized the need for courts to defer to legislative purpose.  Here, the Florida legislature has clearly

spoken on the issue and this Court is bound by its language.  *American Pipe* tolling hence does not apply here." (internal citation omitted)); *see also American Pipe*, 414 U.S. 557–59.

Under Florida law, class action tolling would not be consonant with Chapter 95's legislative scheme.  Instead, class action tolling would be directly inconsistent with the Florida legislature's purpose, as indicated by the clear and unequivocal language of section 95.051(2): "***No*** **disability or other reason shall toll the running of any statute of limitations** ***except those specified*** **in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law**."  (Emphasis added.)  Thus, because Florida's legislative scheme would not be consistent with **any** tolling rule not specifically enumerated in section 95.051(2), *American Pipe* itself prevents courts from reading a class action tolling rule into Florida law.

    **D.**    **While the Florida Supreme Court has twice tolled a statute of limitations in the class action context, it did so as a pragmatic solution to unusual circumstances without reference to *American Pipe*, and there are no unusual circumstance in this case.**

Mosaic anticipates that Plaintiffs will cite two cases from the Florida Supreme Court for the proposition that Florida recognizes class action tolling: *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006), and *Lance v. Wade*, 457 So. 2d 1008 (Fla. 1984).  But neither of these cases establishes any rule regarding class action tolling.  Instead, both are examples of the Florida Supreme Court creating narrow, case-specific exceptions for very unusual circumstances.  Indeed, the majority of federal courts construing Florida law have either not found *Engle* and *Lance* to be persuasive or distinguished them from *American Pipe* tolling. *See Dineen*, 2015 WL 6688040, at *4 ("[T]he two cases on which the court relied in *Sacred Heart* . . . do not discuss class action tolling or § 95.051.  The cases simply allowed putative class members to file their individual state law claims within a certain period following the

dissolution of a class action."); *see also Wilchfort v. Knight*, 307 F. Supp. 3d 64, 82 (E.D.N.Y. 2018) (distinguishing *Lance* and *Wade* because they did not create a cross-jurisdictional rule, assuming they created any kind of tolling rule); *Weatherly*, 322 F. Supp. at 746 n.2 (same).

In *Engle,* plaintiffs filed a class action against several large tobacco companies. 945 So. 2d at 1256. The case was tried pursuant to an unusual three-phase trial plan. *Id.* In phase one, the jury would determine issues common to the class, including whether the tobacco companies were negligent, marketed defective cigarettes, and conspired to conceal the risks of smoking. *Id.* Then, in the phase two, the jury was to determine whether the conduct in phase one caused the class representatives' damages. *Id.* at 1257. Finally, in phase three, new juries would decide the individual class members' claims. *Id.* at 1258. After plaintiffs prevailed in the first two phases and received a class award of $145 billion, including punitive damages, the tobacco companies appealed. *Id.* at 1257. The Florida Third District Court of Appeal decertified the class and found the punitive damages to be excessive. *Id.* at 1254.

The Florida Supreme Court agreed with the Third District that the class had to be decertified but, as a "pragmatic solution," allowed the individual class members to bring actions against the tobacco companies within one year and to apply certain "common core findings" from phase one of the trial as res judicata. *Id.* at 1269–70. This "pragmatic solution" enabled members of the former class to bring individual claims without having to reestablish the tobacco companies' wrongful conduct—spanning forty years—in each trial. In crafting this solution, the majority opinion in *Engle* stressed that the procedural posture of this case is "unique and unlikely to be repeated." *Id.* at 1270 n.12.

*American Pipe* is completely irrelevant to *Engle*.  It is not cited **anywhere** in the *Engle* opinion, and the one-year time frame fashioned in *Engle* does not resemble any kind of coherent tolling principle.  As the Florida Supreme Court acknowledged, it was simply a one-off "pragmatic solution" to an unusual case.  Indeed, in reversing class certification in the Curd Action, the Second District rejected *Engle* as an "idiosyncratic" case on which the trial court should not have relied.  *Curd*, 259 So. 3d at 244–45.  It is inconceivable that *Engle* could be too idiosyncratic to support class certification in the Curd Action while remaining an appropriate model for tolling after certification was reversed—particularly when there is an unambiguous statute and three Florida Supreme Court cases on point that provide otherwise.

*Lance* also involved unusual circumstances, with the court permitting the former class members to proceed individually on fraud claims "within a reasonable time after . . . remand" because they "apparently relied" on class treatment.  457 So. 2d. at 1011.  *Lance* was a class action by mobile home owners who sued a seller of mobile home lots for allegedly making fraudulent contractual misrepresentations about the lots' accessibility.  *Id*. at 1009–10.  Under Florida law, class actions based on fraud in individual contracts generally cannot be maintained.  *See Osceola Groves v. Wiley*, 78 So. 2d 700, 703 (Fla. 1955).  But the trial court nevertheless permitted the action to proceed through trial as a class action.

There is **no mention** of *American Pipe* anywhere in *Lance*.  Instead, like *Engle*, the Florida Supreme Court fashioned a pragmatic solution "[g]iven the circumstances," apparently because there was continuing confusion among some Florida courts about whether class

actions based on individual contractual fraud could proceed as a matter of law.[5]  Here, there is no such confusion.  On the contrary, there is a crystal-clear statute that "specifically precludes application of any tolling provision not specifically provided therein."  *Hearndon*, 767 So. 2d at 1185.[6]  Moreover, as far as the Curd Action is concerned, Plaintiffs were not misled into believing they could file a class action barred by law.  Rather, their former class representatives simply failed to carry their evidentiary burden of demonstrating a methodology for establishing class-wide impact **despite having over a decade to do so**.  *Curd*, 259 So. 3d at 245.

In short, *Engle* and *Lance* are "idiosyncratic" cases in which the Florida Supreme Court fashioned one-off "pragmatic solutions" in very unusual circumstances, which do not exist here.  The denial of class certification is hardly unusual, and just because the Florida Supreme Court has chosen on two rare occasions to fashion pragmatic solutions does not mean that this Court can or should disregard the unmistakably clear language of section 95.051(2): "No disability or other reason shall toll the running of any statute of limitations except those specified in this section . . . ."  Again, "courts **must** presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: '**judicial inquiry is complete**.'"  *Barnhart*

---

[5] The trial court in *Lance* certified the class, and the Third District approved—apparently relying on *Frankel v. City of Miami Beach*, 340 So. 2d 463, 469 (Fla. 1976), where the court had previously receded from applying the *Osceola Groves* rule to non-fraud cases.  *Lance*, 457 So. 2d. at 1010.  However, the Florida Supreme Court in *Lance* reversed the Third District's decision, holding that *Frankel* did not undermine the holding of *Osceola Groves*.  *Id.* at 1010–11.  In so doing, the *Lance* court held that "[g]iven the circumstances," the former class members "should be entitled to proceed individually" on their claims "within a reasonable time after . . . remand" because they "apparently relied" on class treatment.  *Id.* at 1011.

[6] It should not be lost on this Court that *Morsani* and *Hearndon* postdate *Lance* by 17 and 16 years, respectively.  *Larson* postdates *Engle* by 3 years.

534 U.S. at 462. (emphasis added).   Accordingly, this Court should simply apply the plain

language of section 95.051(2) and hold that *American Pipe* tolling does not apply under Florida

law.[7]

   E.   **The minority of federal cases reaching a different conclusion misinterpret Florida's case law and are wrongly decided.**

Despite the clarity of section 95.051(2) a **minority** of federal decisions can be read to

suggest that Florida law recognizes *American Pipe* tolling.   To the extent these cases have

determined (or assumed) that Florida law follows *American Pipe*, they were wrongly decided,

and the majority of federal courts that instead have applied section 95.051(2) are correct.

For instance, in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.,*

*Inc.*, the Northern District of Florida reasoned—in an unpublished decision—that the Florida

Supreme Court's "*de facto* application of equitable tolling in both *Engle* and *Lance*," suggested

that "the doctrine of common law equitable tolling as outlined in *American Pipe* appears to

have been effectively applied in Florida."   No. 3:07CV62/MCR, 2008 WL 2385506, at *3

---

[7] Likewise, there are no intermediate Florida appellate courts that have adopted *American Pipe* tolling for state-law claims, although some occasionally mention *American Pipe* tolling by name.  *See, e.g., Hromyak v. Tyco Int'l, Ltd.,* 942 So. 2d 1022, 1023 (Fla. 4th DCA 2006) (applying *American Pipe* tolling to a federal statute of limitations")*; Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 704 (Fla. 3d DCA 2000) (citing *American Pipe* parenthetically in a discussion about whether a condition precedent on a cruise line ticket had to be satisfied by all class members who were passengers on the ship).  *Browning v. Angelfish Swim Sch., Inc.*, 1 So. 3d 355, 363 n.11 (Fla. 3d DCA 2009) (Shepherd, J., concurring in part, dissenting in part) (citing *Hromyak* for the proposition that "the statute of limitations typically is tolled for asserted class members who later file actions of their own," but failing to acknowledge that *Hromyak* dealt with a federal statute of limitations).   There are also some decisions which mention *American Pipe* in the context of the case-specific tolling in *Engle*.  *See Gaff v. R.J. Reynolds Tobacco Co.*, 129 So. 3d 1142, 1145 (Fla. 1st DCA 2013) (mentioning *American Pipe*, but only in the context of an *Engle* progeny case that was tolled); *see also Soffer v. R.J. Reynolds Tobacco Co.*, 106 So. 3d 456, 463 (Fla. 1st DCA 2012) (Lewis, J., concurring in part, dissenting in part), *decision quashed*, 187 So. 3d 1219 (Fla. 2016).

(N.D. Fla. June 9, 2008); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-2225 SI, 2012 WL 149632, at *3 (N.D. Cal. Jan. 18, 2012) (relying on *Sacred Heart*).

This is a misreading of Florida law because, as explained above, both *Engle* and *Lance* involved pragmatic solutions to unique circumstances and **neither** cites to *American Pipe*. There is no indication that a general rule of class action tolling has been "effectively applied" in Florida, as recognized by the District of South Carolina, which explicitly disagreed with *Scared Heart*'s reading of *Engle* and *Lance*.  *See Dineen*, 2015 WL 6688040, at *4.  While *Dineen* also involved impermissible cross-jurisdictional tolling, the *Dineen* court nevertheless reasoned that *Lance* and *Engle* "do not discuss class action tolling or [section] 95.051," and merely "allowed putative class members to file their individual state law claims within a certain period following the dissolution of a class action." *Id.*  *Dineen*'s reading of Florida law is correct and *Sacred Heart*'s is wrong.

Another misunderstanding appears to have originated in *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 (11th Cir. 2003), where the Eleventh Circuit ambiguously stated, without citation, "There is no dispute that *American Pipe* has been followed in Florida state courts." Courts have apparently misconstrued this language to mean that there was no dispute among courts that Florida recognized *American Pipe* tolling.  *See Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-CV-376-ORL-37, 2015 WL 5008468, at *3 (M.D. Fla. Aug. 21, 2015) (relying on *Raie* for that proposition); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV, 2008 WL 11403203, at *9 (S.D. Fla. Oct. 9, 2008) (same).

However, based on the trial court record in the *Raie* case, it appears the Eleventh Circuit simply meant that none of the parties **in that particular case** disputed that *American Pipe*

applied.  *See* Defendants' Motion to Dismiss and Supporting Memorandum of Law, *Raie v. Cheminova, Inc.*, No. 8:02-cv-1405-T-26TGW (M.D. Fla. Aug. 12, 2002), Dkt. 8; Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, *Raie v. Cheminova, Inc.*, No. 8:02-cv-1405-T-26TGW, (M.D. Fla. Sept. 11, 2002), Dkt. 16.  Subsequently, the courts in *Barkley* and *Total Containment* misunderstood this language from *Raie* to mean that *American Pipe* tolling was recognized in Florida as a matter of law.  Instead—as the trial court papers make clear—the issue of whether *American Pipe* applies in Florida was never presented to or ruled on by the Eleventh Circuit because the parties did not dispute its application.  Moreover, the appellants in *Raie* were not even trying to apply *American Pipe* in a straightforward manner—they were trying to piggyback two simultaneously-pending class actions on top of one another, one of which did not even include the wrongful death claim at issue in *Raie*.  336 F.3d at 1282–83.  Thus, regardless of whether *American Pipe* applied or not, the appellants' claims in *Raie* were untimely, and any discussion of *American Pipe*'s threshold application was dicta.

Two outlier decisions applied *American Pipe* to redundant, parallel state-law claims.  *See Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) (finding that *American Pipe* applies to "new" state-law securities claims "where the substantive law is essentially identical . . . [and] the [previous] class action claims were based on federal statutes"); *Marquis v. U.S. Sugar Corp.*, 652 F. Supp. 598, 602 (S.D. Fla. 1987) ("All parties agree that plaintiffs' federal and state antitrust claims are governed by a four year statute of limitations. . . . The filing of class allegations in the first complaint tolled the statute of limitations for the entire putative class.").  Perhaps under some circumstances, where members

of a former class bring individual federal claims together with substantively-identical state law claims, applying *American Pipe* to both the federal and state law claims does not unfairly prejudice the defendant.   Nevertheless, *Barneby* and *Marquis* do not reference section 95.051(2) or comport with the majority of federal decisions.   Therefore, they should not be followed by this Court.

Finally, just one court applied *American Pipe* to **federal** claims which, in the absence of a specific federal statute of limitations, were governed by whichever state statute of limitations was most analogous.   *See Moncevoir Hyppolite v. Gorday*, No. 89-1843-CIV-NESBITT, 1990 WL 80684, at *10 (S.D. Fla. Mar. 22, 1990).   However, *Moncevoir Hyppolite* is distinguishable.   "When a federal court borrows a limitations period from state law for use in implementing a federal law that does not possess a self-contained statute of limitations, the court is nonetheless applying **federal law**."   *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir. 1999) (emphasis added).   Thus, borrowing a state-law limitations period for a federal claim while simultaneously rejecting state-law tolling principles that contradict *American Pipe* may be justifiable in certain situations, although some courts would disagree.[8]

---

[8] *Compare Cory D. ex rel. Diane D. v. Burke Cty. Sch. Dist.*, 285 F.3d 1294, 1300 (11th Cir. 2002) ("A federal court adopting a state's statute of limitations ordinarily gives effect to that state's tolling provisions.   The tolling provisions, however, will not apply when such application defeats the goals of the federal law at issue." (internal citation omitted)), *with Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) ("[I]n any case in which a state statute of limitations applies—whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action—the state's accompanying rule regarding equitable tolling should also apply.").   It should be noted, however, that section 95.051(2) is not so much a tolling provision as an "anti-tolling" provision.   In *Cory D.*, the Eleventh Circuit rejected a state-law tolling rule that would have saved an otherwise time-barred federal claim because tolling would have been inconsistent with the federal policy behind the claim; avoiding protracted litigation.   285 F.3d at 1300-01.   The logic of *Cory D.* might not apply in reverse.

Regardless, Plaintiffs have only alleged state-law claims, so the rationale of *Moncevoir Hyppolite* does not apply.

In sum, none of the cases Plaintiffs cited in the Curd Action in response to Mosaic's statute of limitations defense stand for the proposition that Florida recognizes *American Pipe* tolling. Therefore, consistent with the majority of federal courts and at least three Florida Supreme Court decisions, this Court should hold that the plain language of section 95.051(2) bars class action tolling in Florida.

## CONCLUSION

It is difficult to imagine any statutory directive clearer than, "**[n]o disability or other reason shall toll the running of any statute of limitations** except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law." § 95.051(2) (emphasis added). Unsurprisingly, the majority of courts that have construed section 95.051(2) have sided with Mosaic directly or indirectly by holding that (a) the tolling exceptions in section 95.051(2) are exclusive, or (b) section 95.051(2) flatly precludes *American Pipe* tolling. This Court and the **only** federal circuit courts that have directly confronted the issue have held that section 95.051(2) means what it says and says what it means: Any tolling rule not specifically enumerated in the statute, including the rule announced in *American Pipe*, is barred under Florida law.[9] Moreover, the most recent Florida Supreme Court decisions to have

---

[9] *See Senger Bros. Nursery*, 184 F.R.D. at 682 ("*American Pipe* and *Crown* did not involve a claim brought in federal court on diversity of citizenship."); *see also Adams* 529 F. App'x at 100 ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed."); *In re Vitamins Antitrust Litig.*, 183 F. App'x at 2 ("The Florida legislature has enumerated eight scenarios in which the applicable statute of limitations is tolled, and a pending class action is not one of them.").

addressed the plain language of the statute have also emphasized that section 95.051(2) "delineates an **exclusive** list of conditions that can 'toll' the running of the statute of limitations," and that section 95.051(2) "**specifically precludes** application of any tolling provision not *specifically* provided therein."[10]   Finally, the U.S. Supreme Court has underscored that tolling cannot exist where a statute or a rule evinces "a clear intent to preclude tolling," and courts may not disregard the plain import of a statute or rule to hold otherwise.[11]

Simply put, this Court should concretely side with a majority of decisions, reject the erroneous minority, and hold that section 95.051(2) prohibits *American Pipe* tolling under Florida law.  Accordingly, Mosaic respectfully requests this Court to enter an order dismissing Plaintiffs' Complaint with prejudice.

**(Attorney's Signature Appears on Following Page)**

---

[10] *Morsani*, 790 So. 2d at 1075 (emphasis added); *Hearndon* 767 So. 2d at 1185 (emphasis added); *see also Larson & Larson, P.A.*, 22 So. 3d at 46 ("[I]n the absence of a specific statutory authorization for doing so, we are precluded from tolling the statute of limitations based on the continuous representation doctrine.").

[11] *Nutraceutical Corp.*, 139 S. Ct. at 714.

22

May 31, 2019                                    Respectfully submitted,

                                                /s/David Weinstein
                                                David B. Weinstein (FBN 604410)
                                                E-mail: weinsteind@gtlaw.com
                                                Christopher Torres (FBN 0716731)
                                                E-mail: torresch@gtlaw.com
                                                Ryan T. Hopper (FBN 0107347)
                                                E-mail: hopperr@gtlaw.com
                                                Vitaliy Kats (FBN 118748)
                                                E-mail: katsv@gtlaw.com
                                                **GREENBERG TRAURIG, PA**
                                                101 E. Kennedy Blvd., Suite 1900
                                                Tampa, FL 33602
                                                Telephone: (813) 318-5700
                                                Facsimile: (813) 318-5900
                                                Secondary Email: thomasm@gtlaw.com;
                                                FLService@gtlaw.com

## CERTIFICATE OF SERVICE

I certify that on May 31, 2019, I electronically filed the foregoing with the Clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of

record.

                                                s/ David Weinstein
                                                Attorney

*ACTIVE 43428965*