UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES ANDERSON, et al.,
    Plaintiffs,

                              Case No. 8:19-cv-01225-MSS-AEP

v.

MOSAIC FERTILIZER, LLC,
    Defendant.
_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MOSAIC FERTILIZER, LLC'S MOTION TO DISMISS

Plaintiffs, CHARLES ANDERSON, et al., oppose Defendant, MOSAIC FERTILIZER, LLC's May 31, 2019, Motion to Dismiss Complaint with Prejudice as Barred by the Statute of Limitations on the grounds set forth below.

### FACTUAL AND PROCEDURAL BACKGROUND

1.    Defendant, MOSAIC FERTILIZER, LLC, (hereinafter "MOSAIC"), through its predecessor corporation, is the owner, operator and/or controlling interest of a storage facility which, on or about September 5-6, 2004, was the source of the catastrophic toxic spill which is the basis of this action. (Dkt. 1-3 ¶¶6, 7, 9, 11, 28, 29, 38).

2.    Prior to the spill, in the summer of 2004, the Hillsborough County Environmental Protection Commission (EPC) and the Florida Department of Environmental Protection (DEP) warned MOSAIC about the levels of wastewater stored in MOSAIC's gypsum storage area. The EPC and DEP warned MOSAIC that its 150 acre storage pond was dangerously close to safety limits. (Dkt. 1-3 ¶41).

1

3. On or about August 10, 2004, the DEP advised MOSAIC that a 100 foot section of the pond dike was only 15 feet wide, three feet narrower than the required 18 feet of width. The DEP also warned MOSAIC that the water in the reservoir was too high and that only an inch or two of rain would raise it to the top of the berm. (Dkt. 1-3 ¶42).

4. The toxic spill occurred shortly thereafter on September 5-6, 2004, from the area of the dike that the DEP had warned MOSAIC was too thin. The result was MOSAIC's unlawful catastrophic discharge of pollutants and hazardous substances, including acid and radioactive pollutants, and/or contaminants, into or upon the surface or ground waters of Florida or the state's lands in Hillsborough, Pinellas and/or Manatee Counties. (Dkt. 1-3 ¶¶11, 12, 28, 38, 42).

5. On September 23, 2004, approximately 18 days after MOSAIC's toxic spill, Curd v. Mosaic Fertilizer, LLC, Case No. 04-CA-008653 (Fla. 13th Cir. Ct.) (the "Class Action Case")[1] was filed as a class action by several class representatives on behalf of all similarly situated commercial fishermen. This includes those commercial fishermen who held saltwater products licenses, fished the affected area before and after the spill, and claimed damages as a result of the spill.

6. On January 9, 2007, after extensive motion practice, the trial court dismissed with prejudice all three counts of Plaintiffs' Fourth Amended Class Action Complaint in the Class Action Case. Plaintiffs appealed, and on September 17, 2008, the Second District

---

[1] As MOSAIC has noted, "[a]lthough this matter is before the court on a motion to dismiss, [it] may take judicial notice of the court documents from the state . . . action." Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1076 (11th Cir. 2013).

issued its opinion in Curd v. Mosaic Fertilizer, LLC, 993 So. 2d 1078 (Fla. 2d DCA 2008), affirming the dismissal and certifying two questions to the Florida Supreme Court.

7. On June 17, 2010, the Florida Supreme Court issued its opinion in Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216 (Fla. 2010), holding that the commercial fishermen in the Class Action Case had both statutory and common law causes of action and quashing the Second District's decision. The Florida Supreme Court established that the Plaintiffs, and thus all of the similarly situated commercial fishermen, hold a "special interest" in the zone impacted by MOSAIC's spill and have causes of action arising out of that interest:

> [T]he commercial fishermen had a special interest within that zone of risk, an interest not shared by the general community. . . . The fishermen were licensed to conduct commercial activities in the waters of Tampa Bay, and were dependent on those waters to earn their livelihood. Mosaic's activities placed the fishermen's peculiar interests directly within the zone of risk created by the presence of its facility. . . . Here, the discharge of the pollutants constituted a tortious invasion that interfered with the special interest of the commercial fishermen to use those public waters to earn their livelihood. . . For the reasons set forth above, we hold that the commercial fishermen have both a statutory and common law cause of action.

Id. at 1228.

8. Upon remand to the trial court, Plaintiffs filed their Fifth Amended Class Action Complaint in the Class Action Case on March 25, 2011. Following another appeal to the Second District, a failed mediation and related motion practice, thousands of pages of personal and confidential court-ordered production on the class members themselves (and Plaintiffs herein),[2] and additional lengthy depositions and class action discovery—including

---

[2] See Case Management Order, Case No. 04-CA-008653 (Fla. 13th Cir. Ct. October 5, 2015) (Stephens, J.) (directing plaintiffs to produce landings data and tax returns of the non-named

3

impact affidavits from the vast majority of the class members[3]—a hearing was held on Plaintiffs' Motion for Class Certification on December 14, 2016. On April 28, 2017, the court issued its, "Order Granting Motion for Class Certification and Bifurcating Case Into Phases of Liability and Damages," in the Class Action Case.

9. On May 25, 2017, MOSAIC filed its notice of appeal of the order granting class certification. On November 9, 2018, the Second District issued its opinion in Mosaic Fertilizer, LLC v. Curd, 259 So. 3d 239 (Fla. 2d DCA 2018), reversing class certification. Mandate was issued on November 29, 2018.

10. Immediately following the reversal of class certification, Plaintiffs herein sought to intervene in the Class Action Case of which they had, until the Second District's mandate, each been members. Plaintiffs filed a Motion for Leave to Intervene and Incorporated Memorandum of Law in the Class Action Case on January 4, 2019, which motion was denied on April 12, 2019.

11. On April 12, 2019, the same day, Plaintiffs herein filed Anderson v. Mosaic Fertilizer, LLC, No. 19-CA-003868 (Fla. 13th Cir. Ct. 2019) (the "State Court Action"). Plaintiffs are members of the former class in the Class Action Case and relied upon the Class Action Case to assert their causes of action. (Dkt. 1-3 ¶3). With the Class Action Case

---

representatives of the putative class within 60 days); see also Agreed Order on Plaintiffs' Motion for Extension of Time to Provide Documentation for Putative Class Members, Case No. 04-CA-008653 (Fla. 13th Cir. Ct. December 17, 2015) (Stephens, J.) (granting plaintiffs an additional 45 days to provide landings data and tax returns for "any putative class members").

[3] See Composite Exhibit S to Memorandum of Law in Support of Plaintiff's Motion for Class Certification, Case No. 04-CA-008653 (Fla. 13th Cir. Ct. November 21, 2016); see also Order Granting in Part and Denying in Part Mosaic Fertilizer's Motion to Strike or Exclude Unnamed Class Members' Form Affidavits, Case No. 04-CA-008653 (Fla. 13th Cir. Ct. April 5, 2017) (Stephens, J.) (finding that class member affidavits would be considered for the purpose of determining whether affiants exist and claim damages from MOSAIC's toxic spill).

having lost its class action status, Plaintiffs reasserted in the State Court Action the same claims which had been pursued on their behalf in the Class Action Case. (Dkt. 1-3 ¶3).

12. On May 17, 2019, MOSAIC filed its Notice of Removal, removing the State Court Action to this Court based upon federal diversity jurisdiction. On May 31, 2019, MOSAIC filed its Motion to Dismiss. The issue raised by MOSAIC has not been previously addressed by the court in the Class Action Case or the State Court Action.

## LEGAL STANDARD

"Except in matters governed by the federal Constitution or by acts of Congress, federal courts in diversity cases must apply the law of the forum state, including its statute of limitations." Reisman v. Gen. Motors Corp., 845 F.2d 289, 291 (11th Cir. 1988); see also Blair v. Taiwan Shin Yeh Enter. Co., No. 8:05-CV-542-T-26EAJ, 2006 WL 6372334, at *1 (M.D. Fla. June 27, 2006). In considering a motion to dismiss, the court must "draw all inferences in favor of the pleader, and accept as true all well-pled allegations." Sobi v. Fairfield Resorts, Inc., 846 So. 2d 1204, 1206 (Fla. 5th DCA 2003). The same is true in federal court. See Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss should be denied "unless the movant can establish beyond any doubt that the claimant could prove no set of facts whatever in support of his claim." Ingalsbe v. Stewart Agency, Inc., 869 So. 30, 35 (Fla. 4th DCA 2004).

## ARGUMENT

Plaintiffs concede that their causes of action accrued shortly after MOSAIC's toxic spill. This much is clear based upon the fact that Plaintiffs herein asserted such claims, by and through their former class representatives, in the Class Action Case a mere 18 days after

the spill. From that date until the reversal of class certification, Plaintiffs have reasonably relied upon the Class Action Case to protect their rights and were often active—in fact court-ordered—participants in the Class Action Case. Both Florida and federal courts have recognized and continue to recognize the tolling of statutes of limitations not only for this *specific* reason, under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) and related cases, but also as a broader rule which falls directly in line with these circumstances. Florida's four year statutes of limitations at issue here were tolled under both overlapping principles for the pendency of the Class Action Case. Plaintiffs' complaint, asserting the same claims as the Class Action Case and filed shortly after decertification, is not barred by the statutes of limitations.

**I.     Florida has a longstanding principle of equitable tolling, which applies to precisely these circumstances, and which serves the same purpose as American Pipe regardless of name reference.**

MOSAIC's strict reliance on section 95.051, Florida Statutes, and its "exclusive" list of conditions which can toll Florida's statutes of limitations is misplaced. Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001), a case MOSAIC relies squarely upon in support of its position, discusses sections 95.11 and 95.051 with the following clear caveat: "[t]he effect of the statutes of limitation . . . can be deflected by several legal theories." See also Lupola v. Lupola, 179 So. 3d 497, 499 (Fla. 1st DCA 2015) (citing Morsani to apply equitable tolling). Morsani later elaborates that only *one* of these "legal theories" is *statutory* tolling under section 95.051, and it lays out examples of four other such legal theories, including "equitable tolling." Id. at 1076-1077. Florida has a longstanding practice of applying equitable tolling as appropriate, both before Morsani and since.

> The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period. The tolling doctrine is used in the interests of justice to accommodate both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing.

Machules v. Dep't of Admin., 523 So. 2d 1132, 1133–34 (Fla. 1988) (internal citations omitted). Equitable tolling focuses not on any misconduct of the defendant, but rather on the plaintiff "with a reasonably prudent regard for his rights." Id. Its application in class action circumstances is well-established in Florida.

One of the first applications of such tolling by the Florida Supreme Court was in a former class action in Lance v. Wade, 457 So. 2d 1008 (Fla. 1984). In Lance, the Third District Court of Appeal had held that a class action could be brought for fraud. See Lance v. Wade, 424 So. 2d 161 (Fla. 3d DCA 1983). The Supreme Court reversed and, upon finding that class treatment was not appropriate, held that the class members:

> [h]aving apparently relied on this cause of action, should be entitled to proceed individually without prejudice. . . . *Given the circumstances of this action, we find that the . . . [class members] should not be subject to the defenses of the statute of limitations or laches, providing that their actions are commenced within a reasonable time after the remand of this decision.*

457 So. 2d at 1011 (emphasis added).

The Florida Supreme Court again applied the doctrine in a class action in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006). In Engle, the trial court certified a class, and a trial followed. The Florida Supreme Court thereafter decertified the class but retained certain of the findings at trial. 945 So. 2d at 1269. The Court then remanded to allow the

7

individual class members to initiate individual actions based upon the "common core" findings of law and fact that had been approved. Id. Applying the principle of equitable tolling, the Florida Supreme Court held that each individual action must be "filed within one year of the mandate in this case." Id. at 1277. In Soffer v. R.J. Reynolds Tobacco Co., 106 So. 3d 456, 458 (Fla. 1st DCA 2012), the First District noted that the Engle decision grants to all former class members whose class was decertified:

> [a] lengthy tolling of Florida's statute of limitations, which ordinarily is two years. For example, the complaint in this case was filed on December 18, 2007, which is more than 15 years after Mr. Soffer died; absent the equitable tolling that Engle provides for progeny plaintiffs, Mrs. Soffer's action against the defendants would be time-barred by more than a decade.

MOSAIC attempts to diminish the Florida Supreme Court's clear application of tolling in Engle and Lance with two primary arguments. First, MOSAIC argues that American Pipe, 414 U.S. 538 (1974) is not mentioned in either case. This is of no consequence. American Pipe speaks *specifically* to class action tolling. Florida's accepted equitable tolling principle has its own broader set of guidelines which do not *require* a class action. The fact that Engle and Lance both happen to involve class actions only bolsters the fact that not only is equitable tolling applied in Florida, but it is applied in precisely the circumstances at issue.

MOSAIC also attempts to argue that Engle and Lance are somehow "one-off" solutions to "unique circumstances," in part because the opinions include phrases such as "given the circumstances," see Lance, 457 So. 2d at 1011, and "pragmatic solution." See Engle, 945 So. 2d at 1269. Despite MOSAIC's attempts to frame it otherwise, there is nothing particularly unique about Lance or its decertification and subsequent tolling. And

while Engle involves a lengthy and complicated procedural history, the fact of its application of equitable tolling remains, as does the sound basis for such application. Moreover, since MOSAIC contends that fashioning a "pragmatic solution" is what the Florida Supreme Court did in Engle, it must concede that the Florida Supreme Court has directed courts applying Florida law to also do so, particularly when a lengthy and complicated procedural history is involved—as here—and when the specific "pragmatic solution" in question is one accepted in Florida. In short, MOSAIC is attempting to parse words because this precise principle has been expressly applied by the Florida Supreme Court in analogous circumstances.

In Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., No. 3:07CV62/MCR, 2008 WL 2385506 (N.D. Fla. June 9, 2008), the United States District Court for the Northern District of Florida presided over a class action in which it was obligated to apply Florida law and statutes of limitations to plaintiffs' individual claims. Sacred Heart held that although section 95.051 did not apply to toll the claims, "equitable tolling principles apply here to permit plaintiffs' individual Florida claims to proceed." Id. at 1. Among the other holdings in Sacred Heart are the following:

> [A] state has a similar interest in applying equitable tolling during the pendency of a class action in its own courts . . . : namely, serving the purpose of the state's class action rule . . . by deterring 'protective' filings of potentially redundant individual suits during the pendency of a class action that may ultimately resolve those suits, and thereby promoting the efficiency and economy of the state's class action procedures. Id.

> Given the Supreme Court of Florida's *de facto* application of equitable tolling in both Engle and Lance, this Court is persuaded that under Florida law, equitable tolling should apply to permit plaintiffs' individual Florida claims to go forward. Id. at 3.

MOSAIC refers primarily to "three Florida Supreme Court" cases which it claims

support its contravening argument: Hearndon v. Graham, 767 So. 2d 1179 (Fla. 2000); Morsani, 790 So. 2d 1071 (Fla. 2001); and Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36 (Fla. 2009). Each is distinguishable, if not outright contradictory to MOSAIC's position. As discussed above, Morsani predates Engle and, in fact, recognizes that the effect of the statutes of limitations *"can be deflected by several legal theories,"* and *"equitable tolling"* is among them. 790 So. 2d at 1074, 1076-1077. Hearndon also predates Engle—not to mention Morsani and its express language recognizing equitable tolling—and deals specifically with the delayed discovery doctrine in a non-class action case. 767 So. 2d at 1184-1185. Larson deals specifically with the continuous representation doctrine, also in a non-class action case. 22 So. 3d at 46. Notably, the continuous representation doctrine had already been rejected in Florida even prior to consideration of its impact on tolling. See Kelley v. Sch. Bd. of Seminole Cty., 435 So. 2d 804, 805 (Fla. 1983). MOSAIC also cites to the recent decision of Nutraceutical Corp. v. Lambert, 139 S. Ct. 710 (2019), but this case addresses a specific federal rule of procedure, not Florida law or even a statute of limitation.

Underlining the issue is that equitable tolling arises, in part, from one of the primary purposes of statutes of limitations: "protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage." Morsani, 790 So. 2d at 1075 (internal citations omitted). The intersection of this long-held purpose with the equally long-held purpose of the class action rule cannot be ignored, and it creates a situation uniquely and expressly appropriate for equitable tolling. In Tenney v. City of Miami Beach, 11 So. 2d 188, 189 (Fla. 1942), the Florida Supreme Court held that:

> [t]he very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal

> processes more effective and expeditious, and to make available a remedy that would otherwise not exist. . . . If this is not the case and the subject matter of the litigation cannot be held to respond to its necessary cost, then the advantage to be derived from a class suit is nullified.

By the same token, "[w]hen the court permits a class suit to be brought or defended by one or more of the class, it necessarily follows that absent parties are properly represented and are bound by the decree." Id. at 189-190.

In short, failure to apply equitable tolling here would run counter to not only established Florida law, but to the very fabric upon which class actions rely, and the only purpose it could possibly serve—that being the primary purpose of statutes of limitations as set forth above—simply has no application here. The claims of the Plaintiffs herein are the *exact* claims that were pursued on their behalf by the former class representatives in the Class Action Case. The Plaintiffs herein reasonably relied upon the Class Action Case, which has been arduously and continuously litigated for nearly fifteen years, to protect those claims. MOSAIC has had notice of these claims since 18 days following its toxic spill. MOSAIC has also had notice of the vast majority of *these specific individuals and the personal and confidential details of their claims* as, at MOSAIC's insistence, these individuals were required to provide thousands of pages of financial and commercial fishing documentation to MOSAIC in the Class Action Case. This is the same case MOSAIC has been litigating since 2004, including actively and directly against the majority of Plaintiffs herein. For MOSAIC to argue that it should now be protected against Plaintiffs' claims is spurious at best.

Instead, the primary rights to be protected are: (1) those of class members in class actions, the very purpose of which actions depends upon the ability of *"suit to be brought . .*

11

. by one or more of the class," and of absent parties to be "properly represented," Id.; and (2) those of these specific Plaintiffs, who timely brought their claims in the Class Action Case. The only determinations which have been made as to these claims are that: (1) after six years of litigation, they are expressly established causes of action based upon a "special interest" held by all class members, see Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216 (Fla. 2010); and (2) after fifteen years of litigation, they can no longer be pursued as a class action. *Given the circumstances*, there are few fact patterns which would be more directly in accordance with Florida's well-established equitable tolling principle.

## II. In addition to a longstanding policy of equitable tolling, both Florida courts and federal courts applying Florida law have applied American Pipe.

Notwithstanding the Florida Supreme Court's adoption and application of the equitable tolling doctrine, Florida courts have also applied the more situation-specific American Pipe, 414 U.S. 538 (1974) and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983) tolling by name. In American Pipe, Utah filed a class action 11 days prior to the running of the statutes of limitations. 414 U.S. at 538. The district court denied certification based on lack of numerosity after the statutes had run. Id. Eight days after the denial, 60 plaintiff municipalities filed a motion to intervene in the suit as individual parties. Id. After the district court denied the motion based upon the running of the statutes of limitations, the Ninth Circuit reversed, holding that, "as to the members of the class Utah purported to represent, suit was actually commenced by Utah's filing of the class action." State of Utah v. American Pipe and Construction Company, 473 F. 2d 580, 583 (9th Cir. 1973).

On certiorari, the United States Supreme Court affirmed the Ninth Circuit's ruling based on the underlying principles of Fed. R. Civ. P 23 and allowed intervention, holding

12

that:

> [t]he commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs. To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid . .

American Pipe, 414 U.S. at 551. The Court further held that:

> This rule is in no way inconsistent with the functional operation of a statute of limitations . . . [and] [t]he policies of ensuring essential fairness to defendants. . . . Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

Id. at 554-555. The Supreme Court reaffirmed its unanimous American Pipe decision in Crown, 465 U.S. 345, 355 (1983), clarifying that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action."

MOSAIC's insistence that American Pipe and Crown do not apply in Florida requires the Court to first ignore the well settled relationship between Florida's class action rule, Fla. R. Civ. P. 1.220, and the federal class action rule, Fed. R. Civ. P. 23. "Because 1.220 is based on Federal Rule of Civil Procedure 23, we can consider federal law as persuasive authority in interpretation of the state rule." Seven Hills, Inc. v. Bentley, 848 So. 2d 345, 357

13

(Fla. 1st DCA 2003). The interests that form the basis of federal class action practice were recognized as the impetus behind Florida's class action rules as early as Tenney, 11 So.2d 188, 189-190 (Fla. 1942), which held that the putative members, "of the class for whose benefit the suit is brought are in effect parties plaintiff." Thus, Florida recognizes that a class action is an assertion of the individual rights of each putative class member. It therefore comes as no surprise that, "no Florida court has refused to apply American Pipe; indeed, the Eleventh Circuit has noted '[t]here is no dispute that American Pipe has been followed in Florida state courts.'" Sacred Heart, 2008 WL 2385506, at *1 (citing Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 (11th Cir. 2003)).[4]

Indeed, for decades, federal courts applying Florida law have repeatedly and routinely recognized and upheld American Pipe and Crown class tolling by name and continue to do so—including Florida's Middle District in multiple decisions—such that the list cannot be adequately reproduced here.[5] Florida appellate courts have done the same. In Latman v.

---

[4] MOSAIC has again attempted to parse words with respect to the language regarding American Pipe in Raie v. Cheminova, Inc. 336 F.3d 1278. In Raie, the Eleventh Circuit, tasked with following Florida law in a diversity case, applied equitable tolling under American Pipe and held that the only reason appellant's claims *were not* tolled by the doctrine was because the claims were not the same as those in the class action. Id. at 1282-1283.

[5] See Marquis v. U.S. Sugar Corporation 652 F. Supp. 598, (S.D. Fla. 1987) ("[P]laintiff's federal and state antitrust claims are governed by a four year statute of limitations . . . Fla. Stat. § 95.11(3)(f). . . . The filing of class allegations in the first complaint tolled the statute of limitations for the entire putative class."); Barneby v. E.F. Hutton Co., 715 F. Supp 1512, 1528-1529 (M.D. Fla. 1989) (Middle District applied American Pipe and Crown and held that putative class members' individual claims under the Florida Securities Act were tolled during pendency of class action.); Moncevoir Hyppolite v. Gorday, No. 89-1843-CIV-NESBITT, 1990 WL 80684, at *10 (S.D. Fla. Mar. 22, 1990) ("Plaintiff's . . . claims are governed by Florida's four year statute of limitations . . . the filing of class allegations in the original Complaint tolled the statute of limitations for the entire putative class."); Mitchell v. Osceola Farms 408 F. Supp. 2d 1275, 1278 (S.D. Fla. 2005) ("[T]he Court must look to state law for the appropriate statute of limitations . . . The statute of limitations in Florida for a breach of contract claim is five years for a written contract, Fla. Stat. §95.11(2)(b), and four years for an oral

Costa Cruise Lines, N.V., 758 So. 2d 699 (Fla. 3d DCA 2000), plaintiffs brought a class action under the Florida Unfair and Deceptive Trade Practices Act. Limitations printed on the cruise tickets required written notice of a claim within 185 days of an incident and suit within one year. Id. at 704. Defendant argued that the claims of putative class members were time barred unless filed within these limitations. Id. The Court rejected this argument and, citing American Pipe, Crown, and Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1336–37 (11th Cir. 1984),[6] held that the class suit tolled the limitations period for putative class members. "Latman is also noteworthy because it illustrates how class action plaintiffs in Florida are treated differently than traditional non-class plaintiffs for purposes of a limitations period." Sacred Heart Health Sys., Inc., 2008 WL 2385506, at *2.

---

contract, §95.11(3)(k). . . . The Supreme Court of the United States has held that the statute of limitations for claims of individual class members is tolled during pendency of a class action and those members may proceed with individual claims following denial of a class certification. . . . [T]he statute of limitations is tolled for Plaintiffs' individual claims."); City of St. Petersburg v. Total Containment, Inc., No. 06-20953-CIV, 2008 WL 11403203, at *8-9 (S.D. Fla. Oct. 9, 2008) (applying American Pipe and Crown to toll Florida statute of limitations, holding that "American Pipe did not depend on the fact that the claims were based on federal law. . . . Moreover, American Pipe tolling has been applied in Florida state courts."); City of St. Petersburg v. Dayco Prod., Inc., No. 06-20953, 2008 WL 5428172, at *4 (S.D. Fla. Dec. 30, 2008) (holding that Florida's statute of limitations was tolled by pending class action as to defendants named in the class action complaint); Barkley v. Pizza Hut of Am., Inc., No. 6:14-CV-376-ORL-37, 2015 WL 5008468, at *3 (M.D. Fla. Aug. 21, 2015) ("The statute of limitations *is* tolled for the duration of a previously filed putative class action for plaintiffs who choose to intervene in the action to pursue their individual claims . . . or plaintiffs who subsequently file individual actions. . . Plaintiff's individual FMWA [Florida Minimum Wage Act] claims are, therefore, entitled to equitable tolling. . . The statute of limitations is tolled from the date that the putative class claims are filed until the date that the court enters an order dismissing the class claimants and claims or declining class certification."); Brexendorf v. Bank of Am., N.A., 319 F. Supp. 3d 1257, 1264 (M.D. Fla. 2018) (holding that"[t]olling is appropriate where the separate suit filed by an individual plaintiff asserts the particular claims raised in the original putative class action," and denying plaintiff's tolling argument on the basis of his *new* claims).

[6] Kornberg, 741 F.2d at 1336–37 ("The filing of a class action . . . commences the suit for the entire class for the purpose of the statute of limitations whether or not each member of the class is cognizant of the action. . . There is no essential difference between contractual and statutory limitations.") (internal citations omitted).

In Hyromack v. Tyco Int'l, Ltd., 942 So. 2d. 1022 (Fla. 4th DCA 2006), plaintiff filed an individual Florida action under the Securities and Exchange Act of 1933 and Securities Act of 1934, which action was then dismissed based upon the statute of limitations. Id. at 1022. The plaintiff appealed on the ground that his action was tolled by a prior class action filed in federal court. Id. at 1022-1023. The Fourth District began by recognizing and upholding the application of American Pipe and Crown, including American Pipe's reasoning that without equitable tolling, "class members would not be able to rely on the existence of the suit to protect their rights." Id. at 1023 (internal citations omitted). The Fourth District ultimately did not toll the statute of limitations solely because the individual claims asserted in state court were different from the claims asserted in the class action.[7] Id. In so doing, it held as follows:

> We agree that the American Pipe holding requires that the claims in the later action be the same as those alleged in the earlier action. If the earlier federal class action involved different claims with different classes, plaintiff would not necessarily have been a member of the earlier class. If he was not a member of the class, he could derive no benefit from its pendency. On the other hand if he had been a member, *his interests would have been asserted in that litigation.*

Id. (emphasis added). While Hyromack involved federal statutes of limitations, Florida's Southern District has accurately clarified that, "American Pipe did not depend on the fact that the claims in the case were based on federal law. Rather, the purpose of the court-made

---

[7] See also Browing v. Angelfish Swim School Inc., 1 So. 3d 355, 363 fn. 12 (Fla. 3d DCA 2009) (Shepherd, J., concurring in part and dissenting in part) ("Although the statute of limitations typically is tolled for asserted class members who later file actions of their own from the time a class complaint is filed to the time certification is denied, this temporal forgiveness extends only so long as the claims filed in the latter complaint are the same as filed in the earlier complaint. Hromyak v. Tyco Int'l, Ltd., 942 So.2d 1022 (Fla. 4th DCA 2006).").

16

tolling rule was to preserve the 'efficiency and economy of litigation which is a principal purpose of the [Fed. R. Civ. P. 23 class action] procedure.'" City of St. Petersburg, 2008 WL 11403203, at *8 (internal citations omitted). Given the modelling of Florida rule 1.220 upon federal rule 23, and the fact that "the same purposes animate both . . . Florida has a similar interest in equitably tolling class actions in order to promote the efficiency and economy of its class action procedures." Sacred Heart Health Sys., Inc., 2008 WL 2385506, at *1.

More recently, the Second District, in the Engle line of cases, held that an attempt to rely upon Hromyak to defeat aspects of equitable tolling was misplaced. See Philip Morris USA, Inc. v. Hallgren, 124 So. 3d 350, 356 (Fla. 2d DCA 2013). Hallgren expanded upon Engle tolling and confirmed and clarified Hromyak's effect as follows: "Hromyak circumscribes the *claims* subject to tolling that may be asserted in an individual action following decertification of a class, but it does not suggest any limitation on the *remedies* that can be sought." Id. (emphasis added). Hallgren further underlines the fact that the Engle cases were not a "one-off." Rather, they rely upon a well-developed network of cases applying equitable tolling in Florida, whether labelled as "American Pipe" or otherwise. Plainly stated as to American Pipe, in general, and Hromyak, in particular, "[t]he Florida courts appear to rely generally upon the American Pipe rule in some form and have interpreted it to require that the claims sought to be tolled be the same as those covered by the previous class action." Burkhart v. R.J. Reynolds Tobacco Co., No. 309CV10727WGYHTS, 2014 WL 12617550, at *4 (M.D. Fla. Apr. 30, 2014).

The inapplicable and contradictory nature of MOSAIC's central cases has already been addressed. Others involve strictly cross-jurisdictional or interstate tolling, in which

17

plaintiffs argue that a class action suit filed in one jurisdiction tolls another jurisdiction's separate and distinct statutes of limitations.[8] The potential conflicts and risk of forum shopping inherent in such cases are not present here.[9] The only law and statutes of limitations in effect are Florida's.[10] Other cases cited by MOSAIC were decided before Engle[11] or fail to address the Florida Supreme Court's clear application of equitable class tolling in Engle or Lance.[12] This failure is significant. The Engle holding has only been expanded[13] and expounded upon[14] since its issuance, including as to the role it plays in

---

[8] See In re: Vitamins Antitrust litigation, 183 F. Appx. 1 (D.C. Cir. 2006); Becnel v. Deutchsche Bank, 2013 App. LEXIS 723 (2nd Cir. 2013); Dineen v. Pella Corp., No. 2:14-CV-03479-DCN, 2015 WL 6688040 (D.S.C. Oct 30, 2015) (holding only that Engle and Lance did not adopt *cross-jurisdictional* class action tolling); Weatherly v. Pershing, LLC, 322 F. Supp. 3d 746 (N.D. Tex. 2018) (also dealing with non-identical claims).

[9] See Sacred Heart Health Sys., Inc., 2008 WL 2385506, at *3, fn. 9 ("[C]ross-jurisdictional issues. . . . provide less justification for tolling because the second jurisdiction likely has little interest 'in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state.'"). *Nonetheless*, several courts in Florida have applied tolling even in cross-jurisdictional circumstances. See, e.g., City of St. Petersburg, 2008 WL 11403203; Barnebey v. E.F. Hutton & Co., 715 F. Supp. 1512 (M.D. Fla. 1989); Am. Nat. Bank of Jacksonville v. Fed. Deposit Ins. Corp., 710 F.2d 1528 (11th Cir. 1983); Becks v. Emery-Richardson, Inc., No. 86-6866-CIVGONZALEZ, 1990 WL 303548 (S.D. Fla. Dec. 21, 1990); Kornberg, 741 F.2d 1332.

[10] See Sacred Heart Health Sys., Inc., 2008 WL 2385506, at *1 ("Sitting in Florida in the instant diversity case, this court must act as if it were a court of the State of Florida, applying Florida law.")

[11] Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co., 184 F.R.D. 674 (M.D.Fla.1999).

[12] Adams v. Deutsche Bank AG, 529 F. App'x 96 (2d Cir. 2013); Williams v. Countrywide Fin. Corp., No. 2:16-cv-04166-CAS(AGRx), 2017 WL 986517 (C.D. Cal. Mar. 13, 2017).

[13] Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1221–22 (Fla. 2016) ("Therefore, neither the statute of limitations nor principles of equitable tolling bars a plaintiff from requesting punitive damages on all properly pled counts.")

[14] In re Engle Cases, 45 F. Supp. 3d 1351, 1364 (M.D. Fla. 2014) ("[T]this Court follows Judge Dalton's reasoning in Starling and concludes that equitable tolling can apply in civil actions."); Burkhart v. R.J. Reynolds Tobacco Co., No. 309CV10727WGYHTS, 2014 WL 12617795, at *4 (M.D. Fla. May 2, 2014) ("But crediting this argument would require the Court to flout the class

Florida's adoption of <u>American Pipe</u>, specifically, and equitable tolling, generally.

"Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule." <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1348 (11th Cir. 2011). The Florida Supreme Court has spoken by explicitly recognizing equitable tolling in <u>Morsani</u> as a tolling mechanism outside of section 95.051 and by applying it in analogous class action circumstances in <u>Lance</u> and <u>Engle</u>. A slew of other cases applying Florida law have followed, all of which make abundantly clear that tolling of this nature is *a Florida rule*, and the only circumstance in which it is not applied in analogous class action situations is when the individual plaintiff's claims differ from those of the class action. That is not the case here. Here, "[t]he statute of limitations is tolled from the date that the putative class claims are filed until the date that the court enters an order . . . declining class certification." <u>Barkley</u>, 2015 WL 5008468, at *3 (M.D. Fla. Aug. 21, 2015).

## CONCLUSION

The plain holdings of Florida courts and federal courts applying Florida law establish that the statutes of limitations on Plaintiffs' claims were equitably tolled by the class action filed a mere 18 days after the spill and thus do not bar Plaintiffs' claims herein. These holdings rest upon a sound and well-reasoned consideration of both the class action rule and the statutes of limitations, as well as each rule's purpose of protecting the rights of plaintiffs and defendants alike. "Indeed, as a general matter, class action suits under both federal and Florida law operate to the benefit of the plaintiffs in certain circumstances and to their

---

action tolling rule as adopted by the Florida courts, i.e., that only those claims actually brought in the class action are tolled."); <u>In re Engle Cases</u>, 767 F.3d 1082 (11th Cir. 2014) (holding that under Florida law, to receive the benefit of class action tolling, the claims in the later action must be the same as those alleged in the earlier class action)

19

detriment in others, *due simply to the plaintiffs' inclusion in the class.*" <u>Sacred Heart Health Sys., Inc.</u>, 2008 WL 2385506, at *2 (emphasis added).  These "benefits" and "detriments" are naturally aligned in accordance with the rule, with judicial economy, with fairness and notice, and beneath it all, with the *substance and merits of the claims*.  Failing to apply equitable tolling to Plaintiffs' identical claims would fly in the face of these rules and—given the circumstances of this case—cause a result so inconsistent with their purpose as to be a manifest injustice to Plaintiffs.  It would also fly in the face of decades of sound caselaw upholding equitable tolling in Florida, both under the <u>American Pipe</u> rubric and otherwise, in precisely these circumstances.

**WHEREFORE**, Plaintiffs, CHARLES ANDERSON, et al., respectfully request that this Court enter an order: (1) denying Defendant, MOSAIC FERTILIZER, LLC's May 31, 2019, Motion to Dismiss; (2) granting Plaintiffs' attorneys fees and costs; and (3) granting any further relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I certify that on the __14th__ day of __August__ 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Andra T. Dreyfus
Dreyfus Harrison, P.A.
Florida Bar No. 276286
1463 Gulf-to-Bay Boulevard
Clearwater, Florida  33755
727-442-1144 / Fax 727-446-4407
courtservice.dreyfuslaw@gmail.com

**AND**
F. Wallace Pope, Jr.
Johnson, Pope, Bokor, Ruppel & Burns, LLP
Florida Bar No. 124449
Post Office Box 1368
Clearwater, Florida  33757
727-461-1818 / Fax 727-461-8617
wallyp@jpfirm.com